**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stacey Marie Smith, | No. CV-21-01557-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of her application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 15), the Commissioner's answering brief (Doc. 16), and Plaintiff's reply (Doc. 18), as well as the Administrative Record (Doc. 12, AR), and now affirms the Administrative Law Judge's ("ALJ") decision.

I.     Procedural History

On August 16, 2018, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning on August 6, 2018. (AR at 20.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id.*) On January 5, 2021, following a hearing, the ALJ issued an unfavorable decision. (*Id.* at 20-36.) The Appeals Council later denied review.

…

II.   The Sequential Evaluation Process And Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III.     The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date and that Plaintiff had the following severe impairments: "cervical, thoracic, and lumbar degenerative disc disease, bipolar II disorder, generalized anxiety disorder, major depressive disorder, and posttraumatic stress disorder (PTSD)." (AR at 24.)[1]   Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing.  (*Id.* at 25-27.)  Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift and carry 20 pounds occasionally, ten pounds frequently, stand and walk for six hours in an eight hour day, and sit for six hours in an eight hour day.  She can occasionally climb ramps and stairs, never climb ladders or scaffolds, occasionally stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to extreme cold and hazards.  In addition, she can follow simple instructions for unskilled work with occasional contact with coworkers or public.

(*Id.* at 27-28.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding (as discussed more below) that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (*Id.* at 28-32.)  As discussed more below, the ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) Dr. Virginia Thommen, M.D., and Dr. Amado, M.D., state agency medical consultants at the initial and reconsideration levels ("generally persuasive"); (2) Dr. John Peachey, M.D., who performed a medical consultative examination on Plaintiff ("unpersuasive"); (3) Dr. Joshua Rubin, Psy.D., and Dr. Brady Dalton, Psy.D., state agency psychological consultants at the

---

[1]     The ALJ also noted that Plaintiff was "assessed with gastroesophageal reflux disease (GERD), migraine, obesity, chronic obstructive pulmonary disease (COPD), cannabis use disorder, hypothyroidism, and hyperlipidemia" but found that the "evidence of record does not support a finding that these impairments, considered individually and in combination, result[], in more than mild limitation with [Plaintiff's] ability to perform basic work activity for the requisite durational period."  (AR at 24.)

initial and reconsideration levels ("generally persuasive"); (4) Dr. Alexander Piatka, Ph.D. ("persuasive" in part); (5) Emily Norris, NP, a provider with a treating relationship with Plaintiff ("persuasive" in part); and (6) Dr. Adeal Zafar, M.D. ("unpersuasive"). (*Id.* at 32-34.)   Additionally, the ALJ evaluated a third-party statement from Rollo Nelson, Jr., Plaintiff's landlord and friend, and deemed it "not persuasive." (*Id.* at 34.)

Based on the testimony of a vocational expert, the ALJ concluded that although Plaintiff was incapable of performing her past relevant work as an inventory clerk, she was capable of performing other jobs that exist in significant numbers in the national economy, including routing clerk, router, and parking lot signaler. (*Id.* at 34-36.)   Thus, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 36.)

## IV.   Discussion

Plaintiff presents four issues on appeal: (1) whether the ALJ erred when discrediting her symptom testimony (Doc. 15 at 10-19); (2) whether the ALJ erred when discrediting the opinions of Dr. Peachey (*id.* at 22-23); (3) whether the ALJ erred when discrediting the opinions of Dr. Piatka (*id.* at 23); and (4) whether the ALJ erred when discrediting the opinions of NP Norris (*id.* at 23-24)   As a remedy, Plaintiff seeks a remand for calculation of benefits pursuant to the credit-as-true rule. (*Id.* at 25.)

### A.   **Plaintiff's Symptom Testimony**

#### 1.   Standard Of Review

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (citations omitted).   If so, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).   Instead, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" only by "providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015).

2.      The ALJ's Evaluation Of Plaintiff's Symptom Testimony

The ALJ provided the following summary of Plaintiff's symptom testimony:

[Plaintiff] alleged in the disability repot that bipolar, anxiety, PTSD, depression, and degenerative disc disease with herniated and bulging discs limits her ability to work.  She testified at the hearing that she is unable to work due to mental impairments and mental symptoms, pain due to degenerative disc disease, and chronic obstructive pulmonary disease (COPD).  She reported that she uses three inhalers and a nebulizer for her COPD, that her neck pain is controlled with good pain management but that she cannot "really sleep" and cannot swim.  She stated that medication treatment for pain began the year prior to the hearing, she does not remember exactly when.  The claimant alleged that she has problems with walking, that she gets out of breath and she alleged that she cannot sit for extended periods, reportedly she needs to move every 20 minutes.  The claimant also alleged that she cannot raise arms above her head or forward, she did not think she could work on a keyboard, 45 minutes at most.  She reported that she lifts a gallon of milk but that it hurts her neck, especially with the right arm problems and standing.  She testified that she can stand for 15 to 20 minutes before her neck starts to hurt, she alleged that the pain is constant and she needs to move.  She testified that she has depression all the time and that she is manic a few days to weeks; she reported that she was diagnosed at 22 with mental impairments and started treatment in May 2017.  She alleged that she tries to avoid going anywhere.  The claimant testified that her mental health issues include mania and depression and alleged that she is usually depressed.  She alleged that she has mood swings, difficulty with getting along with others, and her attention to detail is lacking.

(AR at 28.)

As noted, the ALJ declined to fully credit this testimony because Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 29.)  The ALJ then identified an array of reasons for making this determination.

First, as for Plaintiff's physical impairments, the ALJ stated that although the relevant "study results, treatment records, and examination results reasonably support the finding that [Plaintiff's] multiple degenerative disc diseases are severe," Plaintiff's pain arising from this condition was controllable.  (*Id.* at 29-30.)  In support of this conclusion, the ALJ cited (1) Plaintiff's testimony "that her pain is controlled"; (2) various "[t]reatment

- 5 -

records throughout 2019 and 2020 [that] frequently show normal, within normal, or unremarkable gait, range of motion, and strength"; (3) other medical records suggesting that "the findings relating to decreased range of motion, strength, or sensation were infrequent . . . and the bulk of available physical examination results show normal or mild examination findings"; and (4) "treatment records [that] routinely show providers with treating or examining relationships with the claimant routinely observ[ing] and report[ing] that [Plaintiff] was in no acute distress." (*Id.*)

Second, turning to Plaintiff's mental impairments, the ALJ similarly concluded that although the "available treatment records reasonably support the finding that these impairments are severe and result[] in more than mild limitation," the "available evidence of record, examination results, and opinions provided by medical sources do not support a finding that [Plaintiff] is limited to the extent alleged and are more consistent with the limitations defined in the [RFC]." (*Id.* at 30-31.)  In support of this conclusion, the ALJ cited (1) Plaintiff's "reported ability to live alone and perform activities of daily living independently," including "interact[ing] with others (such as out of state friends, therapy, group, the public with activities like grocery shopping, and providers)"; (2) "available mental status exam results, which frequently showed unimpaired, normal, or mild findings"; (3) "opinions provided by acceptable medical sources"; and (4) "[e]xamination results indicat[ing] that [Plaintiff's] general appearance was normal, her memory intact, her attention and concentration 'good', her motor activity 'normal', her thought content 'normal', her insight 'good', her perception 'normal', and her judgment 'good.'" (*Id.* at 31.)

Third, when more broadly addressing all of Plaintiff's symptom testimony (physical and mental), the ALJ concluded this testimony was undermined by the fact that Plaintiff "reportedly performed work activity in February to March of 2019" and Plaintiff's "reported reason for quitting her job indicates that it had nothing to do with functional limitations." (*Id.*)  The ALJ elaborated: "[Plaintiff's] subjective assessment that the company's extra rules were hardships that were not worth it based on available benefits

has nothing to do with [Plaintiff's] functional capacity or, specifically, the inability to perform work related activities of the job; she simply felt that the extra rules were not worth it." (*Id.*)

Fourth, again with respect to all of Plaintiff's symptom testimony (physical and mental), the ALJ concluded this testimony was undermined by Plaintiff's activities of daily living ("ADLs"). (*Id.* at 31-32.) On this point, the ALJ explained: "[Plaintiff] is able to live alone and perform the bulk of her [ADLs] independently, activities that include taking care of pets, performing personal care, managing mediations, preparing meals, performing lights household chores, going out alone, operating a motor vehicle, shopping in stores . . . , managing personal finances (with allegations that she is 'terrible' at saving money), and enjoy hobbies and interests, which includes painting, playing the guitar, and hanging out with pets." (*Id.*) After acknowledging that Plaintiff's "reported ability to perform these [ADLs] by itself is not dispositive," the ALJ concluded that "this evidence in combination with other evidence in the record . . . undermines [Plaintiff's] subjective functional limitations and supports the finding that her functional limitations to the extent alleged are unpersuasive." (*Id.*)

### 3.   Analysis

Plaintiff raises an array of challenges to the ALJ's evaluation of her symptom testimony. (Doc. 15 at 10-19.) First, Plaintiff argues that the ALJ applied the wrong legal standard. (*Id.* at 11.) Second, Plaintiff argues that the ALJ offered only a general reference to "these symptoms," which failed to provide the requisite level of specificity. (*Id.*) Third, Plaintiff argues that the ALJ made contradictory statements, by recognizing that the medical records were consistent with Plaintiff's allegations of pain but then finding that Plaintiff's allegations were inconsistent with the medical evidence. (*Id.* at 11-12.) Fourth, Plaintiff argues that the ALJ "improperly relied on his own perceived medical expertise" when purporting to find inconsistencies between her testimony and the medical evidence. (*Id.* at 12-13.) Fifth, as for the ALJ's assertion that Plaintiff's physical pain was controlled, Plaintiff contends that the underlying records do not support this conclusion—both her

testimony and the medical records reflect some improvement from treatment, but not enough to sustain competitive work.  (*Id.* at 13-14.)  Plaintiff also contends that improvement from treatment is, alone, an insufficient reason to discredit a claimant's symptom testimony.  (*Id.* at 14.)  Sixth, as for the ALJ's assertion that the medical records generally reflected only normal or mild results, Plaintiff contends this conclusion was flawed for two reasons: (1) the ALJ cited mental health treatment records rather than physical exam records (and the former would not be expected to focus on her physical condition); and (2) some of the cited records actually support Plaintiff's testimony, such as one record stating that Plaintiff had chronic and limiting neck and back pain.  (*Id.* at 15-16.)  Seventh, as for the ALJ's assertion that Plaintiff's mental health records were generally inconsistent with Plaintiff's description of her mental health symptoms, Plaintiff argues that the ALJ erred by providing a non-specific citation "to nearly the entire record," which amounted to an impermissible general finding untethered to any specific symptom. (*Id.*at 16-17.)  Eighth, as for the ALJ's assertion that the medical records did not reflect acute distress, Plaintiff contends this was not a valid reason for discrediting her symptom testimony because her physical and mental impairments are chronic, not acute.  (*Id.* at 17-18.)  Ninth, as for ALJ's decision to discredit her testimony in part based on inconsistency with ADLs, Plaintiff contends the ALJ erred because "the ALJ did not find, and this record does not demonstrate, that a substantial part of a typical day was spent engaged in activities inconsistent with disabling limitations, which the Ninth Circuit holds is a prerequisite for a negative credibility finding based on a claimant's activities."  (*Id.* at 18, citing *Vertigan v. Halter*, 260 F.3d 1044 (9th Cir. 2001)).  Plaintiff also challenges the accuracy of the ALJ's description of one of her ADLs (shopping).  (*Id.* at 18-19.)  Tenth, as for the ALJ's decision to discredit her testimony in part based on her work experience in 2019, Plaintiff argues this was error because the ALJ relied on "offhand remarks on one occasion about one work attempt made to her therapist."  (*Id.* at 19.)

The Commissioner provides a lengthy response to Plaintiff's arguments on these points (Doc. 16 at 12-18), but it is unnecessary to provide a comprehensive summary here

because the Court is satisfied that there are multiple reasons why the ALJ's analysis was free of harmful error. As an initial matter, there is no merit to Plaintiff's contention that the ALJ applied the wrong legal standard, made contradictory findings, and only offered a generic, non-specific discussion of her symptom testimony. The ALJ's analysis regarding Plaintiff's symptom testimony was unusually detailed, spanning several pages, and it is not contradictory to acknowledge that a claimant has severe, limiting impairments while also finding that the impairments are not *as* severe as the claimant seeks to portray them. At any rate, the Ninth Circuit's "cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Lambert v. Saul,* 980 F.3d 1266, 1277 (9th Cir. 2020).

On the merits, the Court finds no error in the ALJ's decision to discredit Plaintiff's symptom testimony based on inconsistencies with Plaintiff's ADLs. Under Ninth Circuit law, such inconsistencies may serve as a permissible basis for discounting a claimant's symptom testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("[T]he ALJ may consider inconsistencies . . . between the testimony and the claimant's conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms. While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (cleaned up).

The ALJ's finding of inconsistency with ADLs was also supported by substantial evidence. Plaintiff testified that she experiences shortness of breath and "get[s] out of breath pretty quick" (AR at 58); cannot reach her arms over her head due to pain (*id.* at 63); can only lift a gallon of milk (*id.* at 64); and experiences periods of depression "[p]retty much all the time" during which she is unable to "do [her] own personal care like dressing, bathing, going to the bathroom" (*id.* at 59-60). However, Plaintiff's property manager

wrote in the third-party function report that Plaintiff engages in painting and gardening "from the time he/she wakes up until going to bed" and "every waking hour" and described Plaintiff's ability to engage in these tasks as "very well." (*Id.* at 246, 248-50.) The property manager also stated that Plaintiff is outside "[m]ost of the day," described Plaintiff's ability to pay attention as "quite well," and described Plaintiff's ability to follow written instructions as "very well." (*Id.* at 249, 251.) Separately, Plaintiff wrote in her own function report that she performs nearly all of her daily living activities independently, including preparing her own meals and handling many of her own household chores. (*Id.* at 256-58.) Additionally, Plaintiff reported to a medical provider that "[s]he has been exercising at the YMCA—running on the track/treadmill and swimming" (*id.* at 839) and testified during the hearing that she engaged in occasional out-of-state travel (*id.* at 61). Although Plaintiff attempts to identify various ways in which these sets of statements regarding her ADLs could be reconciled with her symptom testimony, it was rational for the ALJ to conclude they were contradictory. And "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. Upholding an adverse-credibility finding in this circumstance does not result in "disability claimants [being] penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The Ninth Circuit has recognized that a "tendency to exaggerate" is a "specific and convincing reason" for discrediting a claimant's testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). *See also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider . . . ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid . . . .").

The Court also finds no error in the ALJ's decision to discredit Plaintiff's symptom testimony due to its inconsistency with the evidence that Plaintiff held a job for several weeks in 2019, only to quit for reasons unrelated to her alleged impairments. This, too, is

a permissible reason under Ninth Circuit law for discrediting a claimant's symptom testimony. *Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020) ("The ALJ did not err in discounting Meadows's testimony, because the ALJ offered 'specific, clear, and convincing reasons' supported by substantial evidence for discounting Meadows's testimony.  The ALJ determined [among other things that] Meadows's most recent job as a security contractor in Afghanistan ended because the contract expired, not because he could no longer perform the job . . . ."); *Pineda v. Colvin*, 2014 WL 1356010, *3-4 (D. Ariz. 2014) (concluding that "[t]he ALJ's reasons for rejecting Plaintiff's subjective testimony are sufficient to meet the standard required by the Ninth Circuit" where one of those reasons was that "records showed that Plaintiff 'was working part-time as a leasing assistant on June 14, 2011'").  *Cf. Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (affirming ALJ's rejection of symptom testimony in part because the claimant "completed an electronics training course" during the period of allegedly disabling symptoms and was unable to find work during a different period of allegedly disabling symptoms only "because of a slowdown in the electronics industry").

The ALJ's finding was also supported by substantial evidence.  A progress note from Plaintiff's therapist includes the following notation: "[Plaintiff] reports that she quit her job because it was not a good fit for her and because they didn't train her enough and 'just dumped us into taking calls.  I felt stupid.'" (AR at 887.)  Although Plaintiff attempts to pass this off as an "offhand remark[]" that the ALJ should have ignored (Doc. 15 at 19), it was rational for the ALJ to conclude that it represented the true reason why Plaintiff stopped working—a determination that would, in turn, undermine Plaintiff's testimony regarding her mental and physical limitations, which sought to portray her as wholly unable to work and hold a job.

Finally, the Court also finds no error in the ALJ's determination that Plaintiff's pain was controlled by treatment (and no error in the ALJ's resulting decision to discredit Plaintiff's symptom testimony on that basis).  Although Plaintiff is correct (Doc. 15 at 14) that improvement from treatment is not, alone, a reason for discrediting a claimant's

symptom testimony—the critical question is whether the impairment is no longer debilitating in light of the improvement—Plaintiff described the injections as having a "magical" effect on alleviating her pain.  (AR at 991.)  Additionally, there is evidence in the record that Plaintiff and her provider reported ongoing success with her treatment plan.  (*See, e.g., id.* at 57 [Plaintiff: "I'm having pain but I go to pain management and we're handling it pretty well with the injections and the meds."]; *id.* at 839 ["She got 'pain and steroid shots' about two weeks ago at the pain clinic and states she was pain free until the past few days."]; *id.* at 861, 865, 876 [notes from medical visits where Plaintiff described her level of pain as a 2 or 3 on a 10-point scale].)

Because the ALJ identified multiple specific, clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony, any error with regard to some of the ALJ's other proffered reasons was harmless.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) ("Because we conclude that two of the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error. . . .  [T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error. . . .  Here, the ALJ's decision finding Carmickle less than fully credible is valid, despite the errors identified above."); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record.").

B.   **Dr. Peachey's Opinions**

1.   Standard Of Review

In January 2017, the SSA amended the regulations concerning the evaluation of medical opinion evidence.  *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017).  Because the new regulations apply to applications filed on or after March 27, 2017, they are applicable here.

The new regulations, which eliminate the previous hierarchy of medical opinions, provide in relevant part as follows:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . .   The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . .

20 C.F.R. § 416.920c(a).[2]   Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be."   *Id.* § 404.1520c(c)(1).   Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."   *Id.* § 404.1520c(c)(2)

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).   Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies.   Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."   *Id.*   With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.   The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these

---

[2]   Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the specialization of the provider.  20 C.F.R. § 416.920c(c).

findings." *Id.* at 792 (cleaned up).  Although an "ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records . . . the ALJ no longer needs to make specific findings regarding these relationship factors . . . ." *Id.*

### 2.    Dr. Peachey's Opinions

Dr. Peachey, a consultive medical examiner, examined Plaintiff on October 31, 2018.  (AR 585.)  During the examination, Dr. Peachey observed that Plaintiff "moves very cautiously," "cannot tandem walk," "cannot heel walk," and displayed poor range of motion in her cervical area and certain other areas.  (*Id.* at 586.)  In a form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Physical)," Dr. Peachey opined that Plaintiff can lift less than 10 pounds occasionally; can stand and/or walk for 2-4 hours in an 8-hour workday; can sit for less than 6 hours in an 8-hour workday; and has various other movement and environmental restrictions.  (*Id.* at 588-90.)

### 3.    The ALJ's Evaluation Of Dr. Peachey's Opinions

The ALJ concluded that Dr. Peachey's opinions were "unpersuasive."  (*Id.* at 32.) The ALJ's complete rationale was as follows:

> The undersigned finds the opinion provided by Dr. John Peachy [sic], M.D., a medical consultant who had an opportunity to perform a medical consultative examination on [Plaintiff], unpersuasive.  The undersigned finds the limitations proposed by Dr. Peachy [sic], which limits the claimant to less than sedentary exertional level work, are inconsistent with the overall record. The undersigned notes that [Plaintiff] presented at the consultative exam as moving "very cautiously" and unable to perform activities like tandem walk, heel walk, or hop.  She was also assessed to have straight leg raising sitting of 80 degrees left and right and supine 40 degrees left and right.  The undersigned finds that while it is reasonably for Dr. Peachy [sic] to propose such severe limitations based on these examination findings and the claimant's presentation these examination findings appear markedly inconsistent with the record.  For example, the consultative exam reportedly took place on October 31, 2018 and [Plaintiff] presented with notable problems with gait and positive straight leg raise.  Yet, objective findings

- 14 -

from an office visit dated September 10, 2018, show normal musculoskeletal findings, normal neurological findings, normal extremities findings, and normal gait with, significantly, no reported findings relating to straight leg raise.  Treatment records dated October 15, 2018 and October 30, 2018 from Valle Del Sol showed observed steady gait and normal muscle strength and tone.  By December 13, 2018, examination results showed reduced range of motion of the spine but both steady and upright gait and station with no antalgia, normal strength findings, and no specific mention of positive straight leg raise.  Consequently, it appears that [Plaintiff's] presentation and performance at the consultative exam administered by Dr. Peachy [sic] is not reflect of examination results throughout the record and does not accurately reflect her functional capacity.

(*Id.* at 32-33.)  In other words, although the ALJ did not fault Dr. Peachey for opining that Plaintiff would have significant limitations in light of the observations that Dr. Peachey made during his physical examination in October 2018, the ALJ concluded that Plaintiff's "performance" during that examination was not indicative of Plaintiff's true physical condition, as reflected in her other treatment records.

### 4.    The Parties' Arguments

Plaintiff argues that the ALJ "committed materially harmful error" when discrediting the opinions of Dr. Peachey.  (Doc. 15 at 20-23.)  As an initial matter, Plaintiff argues that the SSA's new regulations "do not abrogate the Ninth Circuit rule that an ALJ may only reject medical opinion evidence based on specific and legitimate reasons based on substantial evidence in a claimant's record."  (*Id.* at 21.)  On the merits, Plaintiff argues that the premise underlying the ALJ's rationale for discrediting Dr. Peachey's opinions (*i.e.*, Plaintiff's presentation during the consultative exam was inconsistent with her presentation during the other medical visits described in the record) is factually unsupported.  (*Id.* at 22-23.)  According to Plaintiff, the only medical records that the ALJ cited to support this premise are mental health records and a December 2018 treatment note from PA Lambert "that is not inconsistent with an assessment of limitations based on physical impairments, because both PA Lambert and Dr. Peachey observed multiple signs of chronic neck, back, and lower extremity issues."  (*Id.*)

The Commissioner disagrees and defends the sufficiency of the ALJ's rationale for

discrediting the opinions of Dr. Peachey. (Doc. 16 at 19-22.) According to the Commissioner, the ALJ permissibly found that although Dr. Peachey's opinions could be credited under the "supportability" factor, they were discreditable under the "consistency" factor. (*Id.*) In particular, the Commissioner emphasizes the conflict between Dr. Peachey's clinical observations "of gait issues and abnormal straight leg raise testing with Nurse Bonnett's observations that Plaintiff exhibited normal gait, muscle tone, bulk, sensation and reflexes in September 2018—less than 2 months prior to Dr. Peachey's examination. Nurse Norris' examination findings from October 2018 also noted normal gait, muscle strength, and tone." (*Id.* at 20.) As for the December 2018 treatment note, the Commissioner argues that it, too, is inconsistent with Dr. Peachey's examination findings because, although it reflected some abnormalities, it also reflected that "Plaintiff's gait, station, muscle mass, motor strength, reflexes, and sensation were all normal." (*Id.* at 20-21.)

In reply, Plaintiff acknowledges that the specific-and-legitimate-reasons standard is no longer applicable in light of *Woods*. (Doc. 18 at 7.) Nevertheless, Plaintiff argues that the ALJ's evaluation of Dr. Peachey's opinions remains erroneous because (1) "the ALJ cited to mental health treatment records to invalidate Dr. Peachey's physical findings" and (2) "[t]he ALJ's one citation to a physical treatment record also failed, as the findings in the treatment record were *consistent* with Dr. Peachey's examination." (*Id.* at 7-8.) Finally, Plaintiff criticizes the Commissioner for citing certain medical records that were not cited in the portion of the ALJ's decision addressing Dr. Peachey. (*Id.* at 8-9.)

5.  Analysis

The ALJ's evaluation of Dr. Peachey's opinions was free of harmful error. The ALJ considered the consistency and supportability factors, as required by the new SSA regulations, and Plaintiff only seems to challenge whether the ALJ's finding as to the consistency factor (*i.e.*, Plaintiff's presentation during the October 2018 examination was inconsistent with how she presented during other examinations) was supported by substantial evidence.

It was.  As the ALJ noted in the underlying decision (and as the Commissioner discusses in detail in the answering brief), Plaintiff's presentation during her examination by Dr. Peachey on October 31, 2018 was markedly different from her presentation during examinations performed by other medical providers on September 10, 2018 (AR 509 ["MUSCULOSKELETAL: normal muscle tone/bulk, no deformities, normal range of motion"]), October 15, 2018 (*id.* at 558 ["Observed Gait: steady.  Muscle Strength and Tone appears: Normal."]), October 30, 2018 (*id.* at 546 ["Observed Gait: steady.  Muscle Strength and Tone appears: Normal."]), and December 13, 2018 (*id.* at 596 [noting some limitations and abnormalities, but not as severe as those noted by Dr. Peachey].)  Although it is true that some of these examinations were performed by mental health providers, Plaintiff does not cite any case or regulation suggesting that mental health providers are incapable of observing and documenting a patient's physical symptoms.  It was rational for the ALJ to rely upon those observations when evaluating the consistency factor.

Alternatively, even if the analysis were limited to the December 2018 examination, there would be no error.  Although Plaintiff has identified reasons why a different factfinder might have declined to find any inconsistency between the observations made during that examination and the observations made by Dr. Peachey, it was rational for the ALJ to make a finding of inconsistency here.  Among other things, PA Lambert's observation that Plaintiff's "[g]ait and station are both steady and upright" (AR at 596) stands in sharp contrast with Dr. Peachey's observations.

C.    **Dr. Piatka's Opinions**

1.    Standard Of Review

Plaintiff's challenge regarding Dr. Piatka's opinions is governed by the same standard of review as Plaintiff's challenge regarding Dr. Peachey's opinions.

2.    Dr. Piatka's Opinions

Dr. Alexander Piatka conducted a psychological examination of Plaintiff on December 14, 2018.  (AR at 598.)  In the resulting "Psychological Evaluation Report," Dr. Piatka identified Plaintiff's chief complaint, noted the records he had reviewed,

summarized Plaintiff's psychosocial/psychiatric history, provided certain clinical observations, addressed Plaintiff's credibility and cooperativeness, and offered certain diagnoses, including Bipolar Disorder I, Unspecified Anxiety Disorder, and PTSD.  (*Id.* at 598-606.)  Additionally, in a "Psychological/Psychiatric Medical Source Statement," Dr. Piatka provided opinions concerning Plaintiff's understanding and memory, sustained concentration and persistence, social interaction, and ability to adapt to change.  (*Id.* at 607-08.)  Some of those opinions were that "it appears possible that [Plaintiff] may have difficulty at times with memory for more detail instructions or with attending to instructions," "[s]he reports some difficulty with recent memory which is potentially a correlate of depression," "[h]er ability to persist on work-related tasks for meaningful periods of time . . . appears to be relatively poor secondary to mood instability," "[s]he may be distracted at times by flashbacks and panic episodes," and "she may have difficulty with safety judgment during manic episodes."  (*Id.*)

### 3.   The ALJ's Evaluation Of Dr. Piatka's Opinions

The ALJ found Dr. Piatka's opinions to be persuasive only in part.  (*Id.* at 33.)  The ALJ's full rationale was as follows:

> The undersigned finds the opinion provided by Dr. Alexander Piatka, Ph.D., persuasive to the extent that Dr. Piatka's opinion supports the finding that the claimant has severe mental impairments, they result in more than mild limitations.  However, the undersigned finds the assessments provided by Dr. Piatka to be vague, including language such as "may" or "likely", without specifically providing a function-by-function assessment and generally recounting the claimant's subjective allegations and reporting.  The undersigned considered the behavioral observations and performance on the mini mental status exam (on which the claimant managed to obtain a score of 25 out of possible 30) as reported by Dr. Piatka and finds they are consistent with and support the finding that the claimant has no more than moderate limitation in the functional areas with limitations consistent with those defined in the residual functional capacity.

(*Id.*)

…

…

- 18 -

4.     The Parties' Arguments

Plaintiff challenges the ALJ's basis for discrediting Dr. Piatka's opinions.  (Doc. 15 at 23.)  Plaintiff argues that although some of Dr. Piatka's opinions were conditioned with phrases such as "may," others were not so conditioned and instead indicated that the functional limitations were "likely" to occur.  (*Id.*)  Plaintiff places particular emphasis on Dr. Piatka's opinion that Plaintiff "would have frequent difficulty managing interactions with coworkers" and notes that, according to the agency's own vocational expert, such a limitation would not allow a claimant to maintain any type of employment.  (*Id.*)

The Commissioner defends the sufficiency of the ALJ's rationale for discrediting Dr. Piatka's opinions.  (Doc. 16 at 22-23.)  According to the Commissioner, "the ALJ found Dr. Piatka's functional assessment less than helpful because it was vague, lacked any function by function assessment, and relied extensively on Plaintiff's subjective allegations and reporting rather than on the results of Plaintiff's mental status exam.  In short, the ALJ found that Dr. Piatka's examination findings did not support his opinion."  (*Id.*)  In a footnote, the Commissioner adds: "To the extent the ALJ did not specifically invoke the words unsupported and inconsist[ent], his meaning was 'clear from context,' and that is sufficient."  (*Id.* at 23 n.13.)

In reply, Plaintiff reiterates her position that "the word 'likely' does not leave much to the imagination, and the assessment was specific enough for the agency's own vocational expert to conclude that the limitations Dr. Piatka assessed would preclude work" and contends that "[t]he Commissioner did not meaningfully defend the ALJ's lack of discussion, but simply reiterated it."  (Doc. 18 at 9.)

5.     Analysis

The ALJ's evaluation of Dr. Piatka's opinions was free of harmful error.  Plaintiff focuses exclusively on one of the ALJ's proffered reasons for discrediting those opinions—that they were expressed in vague terms—and the Court tends to agree that this rationale would not, alone, be a sufficient reason for rejecting Dr. Piatka's subset of opinions that were couched with the modifier "likely."  But this was not the only reason the ALJ chose

to discredit Dr. Piatka's opinions.  As the Commissioner correctly notes, the ALJ also faulted Dr. Piatka for not providing a function-by-function assessment and for relying too excessively on Plaintiff's subjective allegations and reporting and also noted that Dr. Piatka's opinions were not supported by Dr. Piatka's clinical observations or the results of the mini-mental status exam that Dr. Piatka administered.   These are, in general, permissible reasons for discrediting a medical source's opinions under the new SSA regulations—they go to supportability and consistency.  And because Plaintiff does not challenge (or even seem to acknowledge) these alternative rationales for discrediting Dr. Piatka's opinions, she has forfeited any claim that the alternative rationales were invalid or unsupported by substantial evidence.[3]   Accordingly, any error in the ALJ's vagueness rationale was harmless.  *See, e.g., Reed v. Saul*, 834 F. App'x 326, 329 (9th Cir. 2020) ("To the extent the ALJ erred in discounting the opinions of Dr. Cochran because her opinions were based in part on Reed's self-reports of his symptoms, that error is harmless because the ALJ offered multiple other specific and legitimate reasons for discounting Dr. Cochran's opinions."); *Baker v. Berryhill*, 720 F. App'x 352, 355 (9th Cir. 2017) ("Two of the reasons the ALJ provided for discounting examining psychologist Dr. Wheeler's opinion were not legally valid . . . [but] the ALJ provided other specific and legitimate reasons for discounting Dr. Wheeler's opinion. . . .  As a result, any error was harmless."); *Presley-Carrillo v. Berryhill*, 692 F. App'x 941, 944-45 (9th Cir. 2017) ("The ALJ also criticized Dr. Van Eerd's opinion in part because Dr. Van Eerd did not define the terms 'mild,' 'moderate,' or 'severe' in his assessment.  This criticism was improper . . . [but] this error was harmless because the ALJ gave a reason supported by the record for not giving much weight to Dr. Van Eerd's opinion—specifically, that it conflicted with more recent treatment notes from Dr. Mateus.").

　　　…

---

[3]     Even if Plaintiff hadn't forfeited the issue, the Court would conclude that the ALJ's alternative rationales were supported by substantial evidence.  Dr. Piatka largely relied on Plaintiff's self-reports in the "Behavioral Observations" and "Clinical Impressions" sections of the Psychological Evaluation Report.  (AR 602-06.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

D.   **NP Norris's Opinions**

1.   Standard Of Review

Plaintiff's challenge regarding NP Norris's opinions is governed by the same standard of review as Plaintiff's challenges regarding Dr. Peachey's and Dr. Piatka's opinions.

2.   NP Norris's Opinions

On May 8, 2019, NP Norris completed a form entitled "Medical Assessment of Claimant's Ability to Perform Work Related Activities (Mental)." (AR at 756-57.) Among other things, NP Norris opined that Plaintiff's mental impairments would preclude her from completing an 8-hour workday and that Plaintiff had moderately severe impairments in the following categories: understand, carry out, and remember instructions; respond appropriately to supervision; respond appropriately to coworkers; and respond to customary workplace pressures. (*Id.*)

3.   The ALJ's Evaluation Of NP Norris's Opinions

The ALJ found NP Norris's opinions to be persuasive only in part. (*Id.* at 33-34.) The ALJ's full rationale was as follows:

> The undersigned considered the opinion provided by Ms. Emily Norris, NP, a provider with a treating relationship with the claimant, and finds the opinion persuasive to the extent that Ms. Norris assessed the claimant has more than mild, moderate, limitations in the functional areas. However, the undersigned does not find the assessments that the claimant's limitations are moderate to severe consistent with or supported by the record as a whole, specifically treatment records from Valle Del Sol, where Ms. Norris treated the claimant.   The undersigned finds the mental status exam results throughout the record, specifically those from Valle del Sol, show unremarkable to mild findings, (frequently despite the claimant's subjective allegations), and are more consistent with the finding that the claimant does not have more than moderate limitations in the functional areas.

(*Id.*)

4.   The Parties' Arguments

Plaintiff challenges the ALJ's basis for discrediting NP Norris's opinions. (Doc. 15 at 23-24.)   According to Plaintiff, it was improper for the ALJ to cite "the record as a

1   whole" when evaluating the consistency factor because, "[w]ithout more, a reviewing court

2   cannot discern what deficiencies the ALJ believed NP Norris's assessments suffered from."

3   (*Id.*)

4       In response, the Commissioner argues that the ALJ provided adequate support for

5   the findings of inconsistency and lack of supportability because "[t]he ALJ's narrative

6   discussion referenced numerous records in which Nurse Norris assessed Plaintiff's mental

7   status as mostly unremarkable" and also "referenced records from other treatment

8   providers that were inconsistent with Nurse Norris's extensive functional limitations."

9   (Doc. 16 at 23-24.)  "Considered in the full context of his decision, the ALJ's opinion

10  evaluations met the requirements of 20 C.F.R. § 404.1520(b)(2)."  (*Id.*)

11      In reply, Plaintiff accuses the Commissioner of "attempt[ing] to connect the ALJ's

12  rejection [of NP Norris's opinions] to random comments the ALJ made throughout the

13  narrative portion of the decision."  (Doc. 18 at 9-10.)

14              5.    Analysis

15      The ALJ's evaluation of NP Norris's opinions was free of harmful error.  The ALJ

16  explicitly considered the supportability and consistency factors when evaluating NP

17  Norris's opinion, as required by the new SSA regulations, and Plaintiff's only argument is

18  that the ALJ failed to identify, with specificity, the evidence in the record that supported

19  the ALJ's findings of unsupportability and inconsistency.  This criticism misses the mark.

20  The ALJ specifically identified the "treatment records from Valle Del Sol, where Ms.

21  Norris treated the claimant," and "the mental status exam results throughout the record,

22  specifically those from Valle del Sol," as the records that undermined NP Norris's

23  opinions.  (AR at 33.)  The ALJ also identified the portions of the administrative record in

24  which those materials were located.  (*Id.* at 34 [citing "Exhibits 12F; 19F; 20F; and 27F"].)

25  Finally, elsewhere in the opinion, the ALJ summarized the contents of those specific

26  records in more detail.  (*Id.* at 26, 30-31.)[4]

27  _____

    [4]     The Court also notes that, even though Plaintiff has forfeited any challenge on this
28  basis (she challenges only whether the ALJ cited the relevant records with sufficient
    specificity, not whether the cited records actually support the ALJ's findings of
    unsupportability and inconsistency), the ALJ's findings were supported by substantial

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**.  The Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 16th day of February, 2023.

_____
Dominic W. Lanza
United States District Judge

---

evidence.  Plaintiff's examinations between October 2018 and April 2020 show that even when she presented with depressed mood and/or constricted affect, her memory, judgement, concentration, alertness, and thought processes remained intact.  (AR at 546, 558, 615, 622, 632, 725, 735, 893, 920, 949, 955, 965, 977, 985, 1004, 1020, 1038, 1055, 1077, 1097.)